# Clark, *et al.* *v.* Johnson & Lattimer.

## *Destruction of Judgment Lien.*

### (Decided January 21, 1913.   61 South. 34.)

1. *Partnership; Action Against; Judgments.*—Under section 2506, Code 1907, a judgment against W. and J., former partners doing business under the firm name and style of H. & Co., is a judgment against the individual partners, as well as against the firm.

2. *Same; Judgment Lien.*—Under section 4157, Code 1907, the lien of a recorded certificate of a judgment against W. and J., former partners doing business under the name and style of H. and Co., covered all the individual property of the partners as individuals, subject to levy in the county where .the lien was recorded.

3. *Same; Liability of Partners.*—The general rule that the assets of the insolvent partner must be first applied to the payment of his individual debts, and that the partnership creditors can only share in the surplus of such assets beyond what is necessary to satisfy the individual creditors, is a rule of equity and not of law.

4. *Same; Assets of Individual Partner; Creditors.*—In an action on the case for a destruction of plaintiff's lien, on personal property of a partner under a judgment against the partners and the firm, the plaintiff was under no duty to show that such partner owed no separate debts, or that there would be a surplus of assets after paying such separate debt.

5. *Same; Judgment Against; Right of Creditors.*—By recording a judgment against the partnership and the members thereof, plaintiff obtained a legal lien on the individual property of one of the partners, paramount to any equity of creditors of the individual to marshal such property, so as to pay out of it their debt before payment of any partnership debt.

6. *Judgment; Lien; Destruction.*—A judgment lien on personal property may be destroyed in such sense as to entitle the creditor to maintain an action for its destruction, by·a destruction of the property itself, by removing it from the state, by hiding or concealing it, by removing it to other parts of the same county, city or state, so that a creditor does not know where it is, though it be not concealed, by selling to a bona fide purchaser, or by any other act which impairs the lien.

7. *Same.*—Any wrongdoer in a chain of acts by which a judgment lien is destroyed, is responsible to the lien holder whether his act results directly or indirectly in the destruction.

8. *Same.*—The right of action for destroying a judgment lien on personal property is not established by proof of mere conversion.

9. *Same; Evidence.*—Where plaintiff showed that defendants not only sold and converted the property, but that plaintiff did not know

[Clark, et al. v. Johnson & Lattimer.]

where it was, the burden was cast on defendant of negativing an inference that their wrongful sale of the property resulted in the destruction of the judgment lien.

10. *Same.*—Defendants are liable for the destruction of plaintiff's judgment lien on personal property for the act of their vendee in selling the property to others who removed it, so that the plaintiff did not know where it was.

11. *Same; Estoppel.*—If the lien holder clearly and voluntarily abandons the lien, he is estopped to claim destruction of his lien.

12. *Same; Abandonment; Jury Question.*—Under the evidence in this case it was a question for the jury whether or not plaintiff had abandoned his judgment lien.

APPEAL from Geneva Circuit Court.

Heard before Hon. H. A. PEARCE.

Action by Johnson & Lattimer against J. R. Clark and another. There was a judgment directed for defendant, and from a judgment granting plaintiff a new trial, defendants appeal. Affirmed.

W. O. MULKEY, for appellant. The court was justified in giving defendants the affirmative charge upon one of three propositions: 1st, the judgment was against the partnership and not against the individuals, and did not operate as a lien upon any of the individual property of a partner until it was shown that such individual owed no individual obligation, or that the value of the property was greater than the individual obligation.—*Chaflin & Co. v. Behr,* 89 Ala. 503; *VanWagner v. Chapman,* 29 Ala. 172; *Bridges v. McClellan,* 27 Ala. 661; *Smith v. Mallory,* 24 Ala. 628; 2nd, it is not shown that defendants put the property beyond the reach of plaintiff, or that they did anything which prevented plaintiff from enforcing their lien.—*Ehrman v. Oates,* 101 Ala. 604, and 3rd, a judgment creditor may waive or lose the benefit of his lien by his own acts.—23 Cyc. 1403; 21 Am. Rep. 625; 84 Am. Dec. 405; 78 Am. Dec. 354. The court, therefore, erred in granting a new trial.

C. D. CARMICHAEL, for appellee. The courts will not disturb the action of trial courts in granting motion for new trial, unless clearly wrong.—*Cobb v. Malone*, 92 Ala. 630. Under the facts in this case, it was a question for the jury as to whether defendants destroyed the lien, and as to whether or not plaintiff abandoned the lien.—*Ehrman v. Oates*, 101 Ala. 604; *Barnett v. Warren*, 82 Ala. 557; *Teat v. Chapman & Co.*, in MSS. The rule invoked by appellant as to the rights of creditors in the property of the individual is a good rule of equity, but is without application in a court of law.

THOMAS, J.—This was an action on the case by appellees, Johnson & Latimer, against appellants, J. R. Clark and W. H. Holloway, for the destruction of a judgment lien on one horse, the property of J. D. Holloway, against whom plaintiffs alleged in the complaint they had previously obtained a judgment in the circuit court of Geneva county and duly recorded a certificate thereof in said county. On the trial, after the conclusion of the evidence introduced by the respective parties, the court at the request of the defendants in writing, granted them the general affirmative charge, whereupon there was verdict and judgment accordingly. Later during the term the plaintiff made a motion for a new trial, upon the sole ground that the court had erred on the trial in giving the general affirmative charge for defendants. This motion was granted, and formal order and judgment to that end were duly entered. The defendants prosecute this appeal from that judgment, and in the record submitted is a bill of exceptions purporting to contain all the evidence in the case. Our consideration is therefore narrowed to a single inquiry, involving several points, however, to wit: Did the lower court err in giving the general affirmative

charge for the defendants? If it did, the new trial was properly granted; and if it did not, it was not.

The judgment upon which plaintiff predicated his allegation in the complaint of a lien upon the horse mentioned, and which lien was alleged to have been destroyed by the defendants, was a judgment of plaintiffs against "William Holloway and J. D. Holloway, former partners doing business under the name and style of the Holloway Mill Company." This, under the authorities, while a judgment against the Holloway Mill Company, is yet also a judgment against the partners individually, and well supports the allegation in the complaint of a judgment against said J. D. Holloway. —*Baldridge v. Eason,* 99 Ala. 516, 13 South. 74; *Dollins v. Adams & Pollock,* 89 Ala. 351, 7 South. 904; *Leinkauff v. Strauss & Munter,* 76 Ala. 196; *Blackmon v. Moore & Handley Hdw. Co.,* 106 Ala. 460, 17 South. 629; Code, § 2506. It is the same (made so by section 2506 of the Code) as if he had been sued alone on an unsatisfied judgment previously obtained against the partnership only.—*Cox v. Harris,* 48 Ala. 538. Under it his individual property is subject to execution issued thereon without first resorting to and exhausting the partnership property.—*Peace v. Shorter,* 50 Ala. 318; *Dollins v. Adams, supra; Leinkauff v. Strauss, supra; Baldridge v. Eason, supra.*

The lien of a recorded certificate of such a judgment covered all the individual property of said J. D. Holloway, subject to levy and sale under execution issued on said judgment, in Geneva county, where it was recorded, and hence covered the horse mentioned.—Code, § 4157.

While it is a general rule, as contended by appellants, that the assets of an insolvent partner are to be first applied to the payment of his individual debts, and that

[Clark, et al. v. Johnson & Lattimer.]

partnership creditors can only share in the surplus of such assets beyond what is necessary to satisfy the individual creditors, yet this is a rule of equity, and not of law—the equity of marshaling assets—applied in the chancery court upon dissolution and settlement of insolvent partnerships, and in the probate court upon settlement of insolvent estates of decedents, when deceased had been a member of a partnership in his lifetime and left both individual and partnership obligations unsatisfied.—*Claflin & Co. v. Behr,* 89 Ala. 503, 8 South. 45; *Van Wagner v. Chapman,* 29 Ala. 172; *Smith v. Mallory,* 24 Ala. 628; *Bridges v. McCullough,* 27 Ala. 661; *Evans v. Winston,* 74 Ala. 349.

It was not, therefore, incumbent, contrary to the insistence of appellants, upon plaintiff in this action, who is a partnership creditor, to show, before he could subject to the payment of his debt the assets of one of the individuals of that partnership, that that individual owed no separate debts, or that there would be a surplus of such assets after paying such separate debts. This would be requiring of the plaintiff, as a condition to the assertion and maintenance of a legal right, the duty of negativing the existence of facts which would support equitable rights in others, in proceedings in another court that may never be commenced, and which plaintiff was certainly under no duty to commence for them.—*Couch v. Davidson,* 109 Ala. 320, 19 South. 507. Besides, if it were necessary for plaintiff to negative the right of the individual creditors of J. D. Holloway to "marshal" the property of his (one horse) here involved, it was sufficiently done by the introduction in evidence of plaintiff's said judgment against him, and the recorded certificate thereof. By it plaintiff obtained a legal lien on the property for the satisfaction of his debt, paramount and superior to any equity the indi-

vidual or separate creditors of said J. D. Holloway might have had to marshal said property so as to pay out of it.their debts before any partnership debt he might owe.—*Meech v. Allen,* 17 N. Y. 300, 72 Am. Dec. 465.

If such marshaling proceedings had been actually commenced before the plaintiff acquired his lien upon the property, and were pending at the time of this trial, under such circumstances that the defendants here sued would still be liable to an administrator or receiver, appointed in such proceedings by the appropriate court, for the same assets of the judgment debtor here sought to be reached by the plaintiff, then the defendant could probably set this up in defense of the present action in order to avoid double liability for the same tort in converting such assets.—*Kelly v. McCaw,* 29 Ala. 227. But even then the burden of proving such facts would not be on plaintiff. Hence there is certainly no merit in appellant's contention that in order to maintain this suit it was necessary for plaintiff to show, either that J. D. Holloway owed no individual debts, or that the amount of them was less than the total value of all his property.

The gravamen of an action of this character is the destruction of a lien on property so that it cannot be enforced against the property by the lienholder, which destruction may arise, we conceive, in various ways: either from the destruction or consumption of the property itself; or by a removal of it from the State (*Hussey v. Peebles,* 53 Ala. 434) ; or by a hiding or concealing of it within the state; or by a removal of it to other parts of the same county, city, or state so that the lienholder does not know where it is, though it is neither hidden nor concealed (*Shepherd v. Taylor,* 105 Ala. 508, 17 South. 88; *Baker v. Allen,* 161 Ala. 288, 49

[Clark, et al. v. Johnson & Lattimer.]

South. 847) ; or a mere sale of it to some person without notice, actual or constructive, of the lien and under such circumstances as that such person would be protected as a bona fide purchaser against such lien; or any other act of interference with the property to such an extent that the lien upon it is lost, destroyed, or impaired, and cannot be enforced (*Hussey v. Peebles,* 53 Ala. 434; *Baker v. Allen,* 161 Ala. 288, 49 South. 847; *Ehrman v. Oats,* 101 Ala. 606, 14 South. 361; *McCarty v. Roswald & Co.,* 105 Ala. 511, 17 South. 120; *Scarbrough v. Rowan,* 125 Ala. 511, 27 South. 919; *Couch v. Davidson,* 109 Ala. 320, 19 South. 507; *Shepherd v. Taylor,* 105 Ala. 508, 17 South. 88; 13 Ency. Pl. & Pr. 168, 171). And any wrongdoer in the chain of acts by which the lien is destroyed, whether his act results directly or indirectly in the destruction, is responsible.— *Chattahoochee & Gulf Ry. Co. v. Behrman,* 136 Ala. 511, 35 South. 132. But the final result must be a destruction or impairment in order to fix a liability on either the initial, mediate, or immediate wrongdoer; for without a destruction or impairment of the lien there is no injury to plaintiff's rights, and consequently no cause of action.

Mere proof of facts sufficient to show only a conversion, if the action were one of trover by the owner, without more, will not sustain this action; for the interest of the plaintiff in the property is only a lien, which is neither a jus in re nor a jus ad rem, and, unlike the legal title, carries with it neither the possession nor the right to possession, but only a right to have the property levied on and sold under execution for the satisfaction of his judgment. No intermeddling with the property, therefore, is or can be injurious to the plaintiff's rights, which stops short of a destruction or impairment of his lien; for until then there is nothing in the

way of its enforcement, which is the plaintiff's only right. The case is essentially different from that of a suit in trover by the owner. In such a case proof only of a mere conversion of the property is, of course, sufficient; for mere conversion in such case results in injury to the plaintiff, interfering, as it does, with his rights to the possession, dominion, and control of the property, the incidents of ownership. We are well aware that in some of the decisions of our Supreme Court, and in one of this court (*Teat v. Chapman,* 1 Ala. App. 491, 56 South. 267), there are intimations that proof of a mere conversion is sufficient to support an action of case for the destruction of a lien, but the best-considered and leading cases of our Supreme Court on this subject are to the contrary. These, hereinabove last cited, we will follow.

The plaintiff, however, in the present action, made out a prima facie case in the particular discussed, in accordance with the views we have above expressed, when he proved that the defendants had not only sold and converted the property, but that plaintiff did not know, and had no idea, where it was. His lien could not therefore be enforced against it for want of a knowledge of its whereabouts, resulting inferentially from the wrongful act of the defendants in intermeddling or interfering with it by the sale and conversion. In the face of this showing it was incumbent upon defendants to negative the inference that the wrong they did in selling the horse resulted in a destruction of plaintiff's lien.— *Rogers v. Brooks,* 105 Ala. 552, 17 South. 97; *L. & N. R. R. Co. v. Hill,* 115 Ala. 334, 22 South. 163. This they did not do. Of course, the mere sale by them to Donaldson did not destroy the lien; for he bought and held the property in the county where the lien was recorded —therefore had constructive notice of it—and it was

enforceable against the property while in his possession the same as in the possession of defendants, provided plaintiffs knew of its whereabouts; it being without conflict that they did.  The lien, however, was destroyed by Donaldson, defendants' vendee, when he sold it to persons outside of Geneva, who removed it so that plaintiffs did not know where it was.  Defendants, being wrongdoers in the first instance, cannot escape liability for Donaldson's wrongful act, when but for theirs in selling him the property the lien would not have been destroyed.  The general rule is that all parties participating in a wrongful act, whether directly or indirectly, are liable in damages for the wrong done, where injury results.—*Chattahoochee & Gulf Ry. Co. v. Behrman,* 136 Ala. 511, 35 South. 132; *Powell v. Thompson,* 80 Ala. 51; *Ensley Co. v. Lewis,* 121 Ala. 94, 25 South. 729.

The last question is one of estoppel.  The undisputed evidence shows that after defendants sold the horse to Donaldson, and while he was still in Donaldson's possession, and before the latter had resold him, the plaintiff, Johnson, was apprised in some way of the fact, and went to see Donaldson about it, and told him there might be some trouble about the horse. Thereupon Donaldson immediately sees the defendant Clark and, after a conversation with him, returns promptly to see the plaintiff, Johnson, relative to the matter.  Johnson and Donaldson differ as to what was then said between them.  Donaldson testifies that he told Johnson that: "If there is to be any trouble now or hereafter about that horse, you send to my barn and get him."  That Johnson replied, "I will see you directly," whereupon he (Johnson) went upstairs over the store, and after a conversation with some one up there returned in a few moments and said to Donaldson, "Go ahead and trade the horse when you want to."  That understanding the

matter settled he (Donaldson) after that traded the horse to some one outside of Geneva, and did not then know where he was. Johnson testifies, on the other hand, that Donaldson said to him (Johnson) : "If you want to claim this horse, I want to know it. I want to settle any claim for him now." That in reply to this he (Johnson) said, "That will probably crop out later."

If Donaldson's version be correct, there was a clear, express, voluntary abandonment by plaintiff, Johnson, of the lien before ever it was destroyed; and plaintiff would be estopped now, after it was destroyed by his consent and by his invitation, from relying on it to the prejudice of either Donaldson or the defendants." "Consensus facit legem."—*Insurance Co. v. McGookey*, 33 Ohio St. 565. On the other hand, if the version of Johnson be correct, he did not waive or abandon his lien by what he said.—23 Cyc. 1403; *Beardsley v. Foot*, 14 Ohio St. 414, 84 Am. Dec. 407, and cases cited. And his mere failure to enforce, or attempt to enforce, his lien would not amount to a waiver or abandonment thereof. Mere inactivity in this particular, howsoever long continued, if short of the statutory bar would not deprive him of his lien, in the absence of some act creating an estoppel, waiver, or abandonment. If Johnson is to be believed, there was no such act. As to which was correct—the version of Donaldson or of Johnson— was a question for the jury to determine from all the evidence; hence the lower court erred in giving the general affirmative charge for the defendants, which error it corrected by granting plaintiff's motion for a new trial, from which latter judgment only this appeal is taken. That judgment granting the new trial is affirmed.

Affirmed.